IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ADAM LYON, | 6:20-cv-1883-JR |
| Plaintiff, | |
| v. | FINDINGS & RECOMMENDATION |
| OREGON STATE HOSPITAL, a state agency; OREGON DEPARTMENT OF HUMAN SERVICES, a state agency; OREGON HEALTH AUTHORITY, a state agency; PATRICK ALLEN, director of Oregon Health Authority; KRISTINE KAUTZ, Deputy Director of Oregon Health Authority; MIKE MORRIS, Behavioral Health Director, Oregon State Hospital; DELORES 'DOLLY' MATTEUCCI, Superintendent, Oregon State Hospital; DEREK WEHR, Deputy Superintendent, Oregon State Hospital; CARMEN CONTRERAS, MHTT, Oregon State Hospital; STEPHEN BISHOP, MHTT-Security, Oregon State Hospital; MICHAEL MURR, RN, Nurse Manager, Oregon State Hospital; BRYNN BROWN, MHTT, Oregon State Hospital, EUGENE DOE, LPN, Oregon State Hospital; JOHN AND JANE DOE(S), each sued in their individual and official capacities, | |
| Defendants. | |

Page 1 – FINDINGS & RECOMMENDATION

RUSSO, Magistrate Judge:

Plaintiff brings this action seeking relief for the defendants' violations of his rights under the First, Eighth, and Fourteenth Amendments, pursuant to 42 U.S.C. §§ 1983, and 1985. Plaintiff moves for entry of a default judgment against defendant Contreras. For the reasons stated below, the motion should be granted in part.

## BACKGROUND

Plaintiff alleges he is:

> a vulnerable person [who] is a patient at the Oregon State Hospital (OSH), an Oregon Health Authority (OHA) facility. Plaintiff was sexually abused and harassed OSH staff. Defendant failed to provide adequate supervision, training of staff, safeguards and protections for Plaintiff from Defendant Contreras who sexually abused Plaintiff while employed at OSH. Defendants failed to respond to obvious signs Defendant Contreras was grooming Plaintiff and sexually abusing him. Defendants failed to provide counseling for the benefit and protection of the Plaintiff and subjected Plaintiff to recurring psychological damage by failing to treat his ongoing psychological injuries arising from the sexual harassment and abuse.

Amended Complaint (ECF 15) at p. 2.

Plaintiff alleges each individual defendant is or was:

> employees of OHA, DHS [Oregon Department of Human Services] and/or OSH at all times material to this complaint. At all times relevant herein, each Defendant acted under color of state law and within the course and scope of their employment. Each Defendant is sued individually and in his or her official capacity.

Id. ¶ 4.

Plaintiff specifically alleges

> Defendant Carmen Contreras was at all times relevant was employed by the OSH as a Mental Health Therapy Technician (MHTT). Defendant Contreras was responsible for providing physical care, behavioral management, infection control and security activities.

Id. at ¶ 10.

Page 2 – FINDINGS & RECOMMENDATION

Plaintiff alleges:

Between November 1, 2018 and February 14, 2019, Plaintiff was housed in OSH.

Between November 1, 2018 and February 14, 2019, OSH was a residential treatment facility.

In November 2018, Carmen Contreras, an employee of OSH, improperly solicited a sexual relationship with Plaintiff, a patient of OSH.

In November of 2018, Defendant Contreras began flirting with Plaintiff, exchanging touches when they passed each other. Defendant Contreras would brush her hand across Plaintiff's chest or hand as she walked by and allowed Plaintiff to touch her leg on one occasion and her buttocks on another occasion.

Between November 1, 2018 and December 2018, Defendant Contreras and Plaintiff contacted or attempted to contact each other approximately 86 times using the patient phone located on OSH Unit 1. Twenty-six of the calls had a call length of greater than on minute, the longest being one hour and 22 minutes. The average length of the 26 calls was 22.8 minutes.

Between November 1, 2018 and January 1, 2019, Defendant Contreras sent Plaintiff at least 39 digital photos and four sexually explicit videos to his Gmail account. Thirteen of the photographs contained sexually explicit material. In those photographs, Defendant Contreras is seen nude, masturbating, and performing sexual acts. Three photos depicted Defendant Contreras smoking what appears to be a marijuana pipe in a hot tub, 10 other photos were of Defendant Contreras performing sexual acts with her pants off. In four short videos Defendant Contreras is seen masturbating and fondling her breasts.

Between November 1, 2018 and January 1, 2019, Defendant Contreras exposed Plaintiff to sexually explicit materials and sexually explicit language. Although Plaintiff did not access the above-mentioned emails, Defendant Contreras showed him nude photos of herself on her phone. Specifically, Plaintiff described one photo in which Defendant Contreras was bent over and was wearing black underwear that exposed her buttocks and part of her vagina.

Between November 1, 2018 and January 1, 2019, Defendant Contreras engaged Plaintiff in phone sex, where Defendant Contreras would describe herself masturbating and share fantasies about sexual interactions between the two of them. These conversations would take place on Defendant Contreras's personal cell phone and a prepaid cell phone registered under a fake name. Defendant Contreras also used the patient phone in the OSH break room to communicate with Plaintiff.

Between November 1, 2018 and January 1, 2019, Contreras indicated that she wanted to see Plaintiff's genitals. While Defendant Contreras was on a "constant", supervising another patient, Plaintiff exposed his genitals to Defendant Contreras, who responded by "shaking her ass" at him. Oregon State Hospital staff witnessed her doing this but failed to report the incident.

Between November 1, 2018 and January 1, 2019, Defendant Contreras engaged Plaintiff in sexually explicit in-person conversations. Those conversations included Defendant Contreras making a verbal comparison between a rose and her vagina.

> Between November 1, 2018 and January 1, 2019, Defendant Contreras gave Plaintiff sexually explicit cards and other gifts including clothing and food items. One card references the sexual interaction between Defendant Contreras and Plaintiff where Plaintiff exposed his genitals to Defendant Contreras. Another card describes Defendant Contreras masturbating while wearing Plaintiff's sweatshirt followed by Contreras' statements that, "I want to eat you like a sweet dessert. I want your warmth and sweetness in my mouth."

Id. at ¶¶ 17-27.

Plaintiff alleges the Office of Training, Investigations and Safety (OTIS) received a report regarding the abuse on December 25, 2018. A subsequent investigation revealed OSH employees failed to report knowledge of inappropriate actions taken by Contreras or take action to protect plaintiff, and that more formal training should have been provided to staff regarding boundaries. Id. at ¶¶ 28-40. Plaintiff asserts that on February 21, 2019, OTIS determined defendant Contreras sexually abused plaintiff by exposing plaintiff to sexually explicit materials and sexually explicit language. Id. at ¶ 42.

Plaintiff asserts the following claims against defendant Contreras.

(A) Cruel and unusual punishment in violation of the Eight Amendment:

Plaintiff asserts:

1) Defendant Contreras had sexual contact with Plaintiff, an adult considered incapable of consenting to a sexual act under ORS 163.315 between November 1, 2018 and January 1, 2019;
2) Defendant Contreras engaged in sexual harassment, sexual exploitation and inappropriately exposed Plaintiff to sexually explicit material and language;
3) Defendant Contreras, an employee of OSH, had sexual contact with Plaintiff, and adult served by the facility and Defendant Contreras;
4) Defendant Contreras was an individual providing mental health treatment to Plaintiff and had sexual contact with Plaintiff, an individual receiving mental health treatment. Sexual contact included touching of Plaintiff's intimate parts and causing Plaintiff to touch Defendant Contreras intimate parts for the purpose of arousing or gratifying a sexual desire of Defendant Contreras;
5) Defendant Contreras sexually harassed Plaintiff by means of inappropriate sexual comments and exposure to sexually explicit material;
6) The actions of Defendant Contreras are consistent with the sexual abuse of a state hospital patient by a staff member as set forth in ORS 430.835- 430.765.

Page 4 – FINDINGS & RECOMMENDATION

    7) The actions of Defendant Contreras are in violation of existing state hospital standards, the United States Constitution, and state and federal laws and rules.

Id. at ¶ 55.

Plaintiff alleges DHS/OHA/OSH defendants "participated in Defendant Contreras' affirmative acts of sexual abuse against Plaintiff, and when they omitted performing an act which they are legally required to do that causes the deprivation." Id. at ¶ 91.

(B)    Failure to Protect in violation of the Eight Amendment (against all defendants)

    Plaintiff asserts:

    1) DHS/OHA/OSH's failure to timely investigate Defendant Contreras' actions;
    2) DHS/OHA/OSH's failure to timely investigate Defendant Bishop's actions;
    3) DHS/OHA/OSH's failure to note and respond to evidence of abuse;
    4) DHS/OHA/OSH's willfully ignored clear violations of restrictions on contact and behavior permitted between staff and patients;
    5) DHS/OHA/OSH's willfully ignored clear signs of "grooming" and sexualized behavior by staff toward inmates;
    6) DHS/OHA/OSH's failure to provide adequate supervision and training for staff;
    7) DHS/OHA/OSH's failure to provide adequate safeguards and protections for patients from Defendants Contreras and Bishop;
    8) DHS/OHA/OSH's failure to respond to obvious signs that Defendant Contreras was grooming Plaintiff, and displayed predatory sexual patterns which were known to many staff members including security staff and management at OSH;
    9) DHS/OHA/OSH's knowledge of Defendant Contreras' actions and their failure to take immediate action to stop Defendant Contreras' actions;
    10) DHS/OHA/OSH's failure to protect Plaintiff from sexual assault, harassment, and intimidation from OSH employees;
    11) DHS/OHA/OSH's failure to protect Plaintiff from physical harm from OSH employees.

Id. at ¶ 77, see also id. at ¶ 92.

(C) Failure to Supervise in violation of the Eight Amendment (against all defendants).

Plaintiff alleges the constitutional deprivations he suffered are the proximate and direct cause of a non-interested, indifferent, and willfully ignorant supervisory practice by the named defendants which amounted to deliberate indifference to plaintiff's rights. Id. at ¶ 84, 86

(D)   Negligence (against all defendants).

Plaintiff alleges:

> The constitutional deprivations suffered by Plaintiff are the proximate and direct cause of a non-interested, indifferent, and willfully ignorant supervisory practice by the named Defendants. The supervisors have a constitutional duty to protect patients and to provide them with safe and humane conditions of confinement including the right to be free from sexual harassment, abuse and assault by staff. This duty imposed on supervisory staff includes the obligation under the law to fully investigate claims of sexual misconduct by staff against patients, the mandatory duty to report and address claims of sexual assault on patients, the duty to maintain a good and constant supervision of female staff supervising male patients, and the duty to ensure that patients are held in constitutionally adequate conditions, including housing free of physical harm. The duty is enhanced when the patient population is especially vulnerable due to their mental illness.

Id. at ¶ 99.

Plaintiff asserts that as a result of defendant's behavior he suffered repeated sexual harassment, sexual assault, physical violence, was placed in constant fear for his safety and suffered severe emotional trauma. Id. at ¶ 100.

Plaintiff initiated this action on November 1, 2020 and served defendant Contreras on December 17, 2020 (ECF 18). Defendant Contreras failed to respond to the complaint and on April 2, 2021, the Court granted plaintiff's motion for entry of default. Plaintiff now moves for a default judgment.

DISCUSSION

Plaintiff seeks a judgment of money damages in the amount of $1,513,840.00 plus interest for compensatory damages, $6,816.00 for attorney's fees, and costs of $5,918.67. Proposed Form of Order (ECF 39) at p. 12.

Entry of default is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). A party has no duty to defend, however, unless the plaintiff properly served the defendant with the summons and complaint, or waives such service, pursuant to Federal Rule of Civil Procedure 4. See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999) ("one becomes a party officially, and is required to take action in that capacity, only upon service of a summons").

Before the Court decides whether to grant default judgment, Federal Rule of Civil Procedure 55(b)(2) requires the Clerk's entry of default. However, entry of a defendant's default does not automatically entitle plaintiff to a court-ordered judgment. See Draper v. Coombs, 792 F.2d 915, 924–25 (9th Cir. 1986). Indeed, a district court has discretion in deciding whether to enter a default judgment. See Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising this discretion, the court may consider a number of factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits (the Eitel factors). See Eitel v. McCool, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Additionally, when a party seeks entry of default judgment, courts have a duty to examine their own jurisdiction—both subject matter and personal. See In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999).

Page 7 – FINDINGS & RECOMMENDATION

This Court has subject matter jurisdiction pursuant to 28 U.S.C §§ 1331 and 1338 because these are federal causes of action arising under 42 U.S.C. §§ 1983, 1985.

The Court has personal jurisdiction over the defendant because defendant Carmen Contreras resided within this District at the time plaintiff initiated this action and committed the alleged activities in violation of plaintiff's rights within this District. Moreover, service of process upon defendant was accomplished in Salem, Oregon. See Affidavit of Service (ECF 18, p. 3).

It appears plaintiff seeks entry of judgment only as to his claim for cruel and unusual punishment under 42 U.S.C. § 1983. See Proposed Order (ECF 39) at pp. 9-10 (discussing only cruel and unusual punishment claim). Accordingly, the Court analyzes only the merits of that claim.

A.   Cruel and Unusual Punishment/Due Process

The complaint does not allege plaintiff was convicted of a crime and subsequently committed to the OSH. Pretrial detainees, whether or not they have been declared unfit to proceed, have not been convicted of any crime. Therefore, constitutional questions regarding the conditions and circumstances of their confinement are properly addressed under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment's protection against cruel and unusual punishment. City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983). Nonetheless, due process rights of pretrial detainees are "at least as great as the Eighth Amendment protections available to a convicted prisoner." Id. Even though the pretrial detainees' rights arise under the Due Process Clause, the guarantees of the Eighth Amendment provide a minimum standard of care for determining their rights, including a right to both medical and psychiatric care. Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002) (overruled on other grounds, Castro v. Cty. of Los Angeles, 833 F.3d 1060, 1076 (9th Cir. 2016)).

Page 8 – FINDINGS & RECOMMENDATION

"Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Youngberg v. Romeo, 457 U.S. 307, 320-21 (1982). Civilly committed persons must be provided with mental health treatment that gives them "a realistic opportunity to be cured or improve the mental condition for which they were confined." Sharp v. Weston, 233 F.3d 1166, 1172 (9th Cir. 2000). Thus, because "there can be no doubt that severe or repetitive sexual abuse of an inmate by a prison officer can be "objectively, sufficiently serious" enough to constitute an Eighth Amendment violation," Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir. 1997), such abuse will suffice to prove a violation of the Fourteenth Amendment in the case of an involuntarily committed patient.

To establish liability under 42 U.S.C. § 1983, plaintiff must show both a deprivation of a right secured by the Constitution and laws of the United States, and that the deprivation was committed by a person acting under color of state law. Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1138 (9th Cir. 2012). Allegations in the complaint establish that defendant Contreras, by virtue of her employment by OSH, was acting under color of state law while performing her duties at OSH.

It appears that the appropriate way in which to view plaintiff's claim against defendants including defendant Contreras, is as a claim asserting a failure to protect in violation of the Due Process Clause.[1] The elements of such a claim are:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
> (2) Those conditions put the plaintiff at substantial risk of suffering serious harm;
> (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and

---

[1] The Court recognizes that the claim is based on a failure to protect plaintiff from defendant Contreras. However, defendant Contreras also failed to protect plaintiff from her own actions in engaging in the sexually explicit activities and failed to stop the harms that allegedly resulted by continuing to engage in such activity.

Page 9 – FINDINGS & RECOMMENDATION

(4) By not taking such measures, the defendant caused the plaintiff's injuries.

Castro v. Cty. of Los Angeles, 833 F.3d 1060, 1071 (9th Cir. 2016).

With respect to the third element, the defendant's conduct must be objectively unreasonable. Id.

Where, as here, a default has been entered, the factual allegations of the complaint together with other submitted competent evidence must be taken as true. See TeleVideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir.1987); Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir.1978).[2]

The pleadings establish Contreras intentionally engaged in repetitive sexual abuse of plaintiff which put plaintiff at risk of serious harm. The complaint also establishes that rather than take measures to abate that risk, Contreras actively engaged in the harmful activity herself even though an objectively reasonable person in her position would have appreciated the obvious risk to plaintiff of engaging in such behavior. Finally, the complaint establishes that as a result of the repeated sexual abuse by Contreras, plaintiff suffered severe emotional trauma and a significant deterioration in his mental state resulting in severe anxiety, stress, anger, hopelessness, depression, and ongoing battles with stress. Amended Complaint (ECF 15) at ¶ 59-60.

B.     Eitel Analysis

As noted above, in exercising its discretion to award a default judgment, the Court considers the seven factors under Eitel, 782 F.2d at 1471-72.

---

[2] Allegations as to the amount of damages are not accepted as true and a plaintiff seeking damages through a default judgment must prove damages. TeleVideo Systems, Inc., 826 F.2d at 917-18.

Page 10 – FINDINGS & RECOMMENDATION

(1)   Factor One: Possibility of Prejudice to Plaintiff

In assessing this factor, courts have considered whether plaintiff would be without recourse for recovery if the motion for default judgment is denied. See, e.g., J & J Sports Prods., Inc. v. Cardoze, 2010 WL 2757106, at *5 (N.D. Cal. July 9, 2010); PepsiCo, Inc. v. California Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Plaintiff has no recourse to obtain relief other than through this action against this defendant.

(2)   Factors Two and Three: Merits of Claims and Sufficiency of Complaint

Upon entry of default, this Court must take the well-pleaded factual allegations of the complaint as true. See Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."); Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) ("In reviewing a default judgment, this court must take the well-pleaded factual allegations of [the complaint] as true.").

As noted above, the complaint and supporting documents establish the elements of plaintiff's claims sufficient to prove liability.

(3)   Fourth Factor: Sum of Money at Stake

Under the fourth Eitel factor, "the court must consider the amount of money at stake in relation to the seriousness of [d]efendant's conduct." PepsiCo, 238 F. Supp. 2d at 1176-77; see also J&J Sports Productions, 2010 WL 2757106, at *5 ("a large sum of money at stake would disfavor default damages," such as a request for $114,200 in damages); Board of Trustees of the Sheet Metal Workers v. Vigil, 2007 WL 3239281, at *2 (N.D. Cal. Nov. 1, 2007) ("[D]efault judgment is disfavored if there were a large sum of money involved").

Plaintiff seeks over $1.5 million in compensatory damages against defendant Contreras. Such a large award weighs against entering default judgment. Courts balance the amount of damages against the other Eitel factors. See Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1060 (N.D. Cal. 2010) (holding that the damages in the range of one to five million dollars did not defeat entry of default judgment when the defendant had engaged in willful infringement and refused to respond to allegations in the lawsuit); see also Khraibut v. Chahal, 2021 WL 1164940, at *15-25 (N.D. Cal. Mar. 26, 2021) (allowing total judgment of $1,735,442.20) for workplace discrimination, breach of contract, failure to pay wages, retaliation and fraudulent misrepresentation).

Plaintiff has alleged serious and repeated conduct on the part of Contreras. Allowing someone empowered by virtue of her position to abuse such a vulnerable person to evade significant judgment in accordance with the magnitude of her actions by failing to appear as a defendant impedes the interests of justice. See Rode v. Credio, 2016 WL 5339682, at *5 (D. Ariz. Aug. 3, 2016), report and recommendation adopted, 2016 WL 5109866 (D. Ariz. Sept. 20, 2016) (In light of the egregious conduct alleged to have occurred, the Court finds that the judgment Plaintiff seeks of $10,000,000, although large, is proportional to the Defendant's alleged conduct). Plaintiff seeks damages as follows:

> 1) The claim of the Plaintiff is for a total of: $1,513,840.00 plus interest.
> 2) Due to the actions of defendant Contreras and her interactions with Plaintiff, Plaintiff has been emotionally disabled: unable to trust staff and therefore unable to receive adequate treatment.
> 3) This lack of treatment and distrust of OSH employees—who are specifically in charge of his ongoing care and rehabilitation—resulted in Plaintiff sustaining a significant hip injury from an interaction with another defendant, and reoccurring periods of conflict with OSH staff members that continues to inhibit his treatment, further delaying his release.
> 4) $700,000.00 – False imprisonment:

     a. $350,000 per year of additional imprisonment after Plaintiff's December 2019 PSRB hearing. Defendant Contreras's actions directly resulted in this continued detention.
      i. Defendant Contreras was not relieved of her duties until February 21, 2019. Defendant Contreras's abuse directly affected Plaintiff's January 9, 2019 Psychiatric Security Review Board (PSRB) hearing. Defendant Contreras was still working at OSH and abusing Plaintiff at this time, coloring his ability to present himself appropriately for this hearing or participate meaningfully in treatment beforehand.
     b. $150,000 – Mental Anguish and Emotional Injury/Disability:
      i. $50,000 – Lack of trust for staff, inability to trust women or treatment providers, negative self-thoughts, victimization.
      ii. $100,000 – Contreras's abuse and subsequent gaslighting by OSH doctors and staff has continued to make Plaintiff paranoid and confused, as though staff members are conspiring and or retaliating against him both as a predator and for seeking justice for his harms.
     c. $15,600 – Therapy after release:
      i. Emotional damages that will require ongoing treatment once actually released from OSH.
      ii. $150/hr once a week and as needed, for 2 years (104 sessions minimum).
     d. $648,240.00- OSH $888.00 / per day costs. Due to Defendant Contreras' actions, Plaintiff will be housed in the OSH for an additional two years. This amount reflects 365(2) x $888.00.

Proposed Order (ECF 39) at pp. 12-14.

Although the request for compensatory damages appears reasonable in light of Contreras' conduct and the harm that resulted, the request for $700,000 for additional two years confinement at OSH and the request for $888 per day for the confinement appears to be a double recovery for the damages related to this harm. Accordingly, the request for compensatory damages related to this harm should be reduced by $648,240.

  (4)  Fifth Factor: Possibility of Dispute Over Material Facts

In addressing the fifth factor, the Court considers whether a dispute concerning material facts exists. As mentioned above, "[u]pon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." PepsiCo, 238 F. Supp. 2d at 1177. Thus, "[t]he fifth factor . . . weighs in favor of default judgment when the claims in the complaint are

Page 13 – FINDINGS & RECOMMENDATION

well-pleaded." Joe Hand Prods. v. Holmes, 2015 WL 5144297, at *7 (D. Or. Aug. 31, 2015). Otherwise stated, "[b]ecause all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists." Elektra Entm't Grp., Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005).

(5)     Sixth Factor: Excusable Neglect

The sixth factor pertains to the possibility that the default resulted from excusable neglect. There is no evidence here of excusable neglect and, as noted above, plaintiff properly served defendants with a copy of the summons and complaint.

(6)     Seventh Factor: Policy Favoring Decisions on the Merits

Factor seven is "the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits," specifically the policy that "[c]ases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. However, "this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action." Joe Hand Promotions, Inc. v. Machuca, 2014 WL 1330749, at *6 (E.D. Cal. Mar. 31, 2014). Where a defendant has failed to answer a complaint, it "makes a decision on the merits impractical, if not impossible." PepsiCo, 238 F. Supp. 2d at 1177. Fed. R. Civ. P. 55 allows the court to terminate a case before a hearing on the merits when a defendant fails to defend an action. Id. Thus, the preference to decide cases on the merits does not preclude a court from granting default judgment. PepsiCo, 238 F. Supp. 2d at 1177.

Here, a decision on the merits is impossible because defendant Contreras failed to appear, plead, or defend this action. Additionally, all other factors weigh in favor of a default judgment. Therefore, the seventh factor is not dispositive, and the Court is not precluded from entering a default judgment against defendants.

Page 14 – FINDINGS & RECOMMENDATION

C.     Costs

Plaintiff seeks costs to recover the filing fee of $400, law clerk time in the amount of $324.55, copies of a video in the amount of $70.12, and legal assistant time in the amount of $5,124. "Unless a federal statute, these rules or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). "Rule 54(d)(1) creates a presumption in favor of awarding costs to the prevailing party, and a district court has limited discretion to deny fees under the rule." Goldberg v. Pac. Indem. Co., 627 F.3d 752, 758 (9th Cir. 2010). However, law clerk time and legal assistant time are not taxable costs. See 28 U.S.C. § 1920. Such costs are more appropriately assessed as attorney fees. Accordingly, cost should be allowed in the amount of $470.12.

D.     Attorney Fees

As noted above, plaintiff seeks $324.55 for law clerk time and $5124.00 for paralegal time spent on the case. In addition, plaintiff seeks $6,816.00 for attorney time spent on the case. Attorney's fees are authorized in a proceeding to vindicate civil rights. 42 U.S.C. § 1988(b).

Generally, attorney's fees are calculated using the lodestar method, i.e., by multiplying the number of hours worked by the reasonable hourly rate. See Perdue v. Kenny A., 559 U.S. 542, 551 (2010) (holding "the lodestar approach" is "the guiding light" when determining reasonable fees). In determining the "reasonable hourly rate to use for attorneys and paralegals[,]" the court looks to the "prevailing market rates in the relevant community." Gonzalez v. City of Maywood, 729 F.3d 1196, 1205 (9th Cir. 2013) (citations and internal quotation marks omitted). The court also excludes hours "that are excessive, redundant, or otherwise unnecessary." McCown v. City of Fontana, 565 F.3d 1097, 1102 (9th Cir. 2009) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). The party seeking fees bears "the burden of documenting the appropriate hours expended

Page 15 – FINDINGS & RECOMMENDATION

in the litigation, and [is] required to submit evidence in support of those hours worked." *United Steelworkers of Am. v. Ret. Income Plan for Hourly-rated Emps. Of Asarco, Inc.*, 512 F.3d 555, 565 (9th Cir. 2008) (quotations omitted).

For purposes of determining the prevailing market rate, the relevant community is the "one in which the district court sits." *Davis v. Mason County*, 927 F.2d 1473, 1488 (9th Cir. 1991), superseded by statute on other grounds as recognized by *Davis v. City & County. of San Francisco*, 976 F.2d 1536, 1556 (9th Cir.1992). This Court uses the most recent Oregon State Bar Economic Survey as a benchmark for comparing an attorney's billable rate with the fee customarily charged in the locality. *Precision Seed Cleaners v. Country Mut. Ins. Co.*, 976 F. Supp. 2d 1228, 1244 (D. Or. 2013); see also *Copeland-Turner v. Wells Fargo Bank*, 2012 WL 92957, at *2 (D. Or. Jan. 11, 2012) ("Judges in the District of Oregon use the Oregon State Bar Economic Survey . . . as a benchmark for assessing the reasonableness of hourly billing rates."). The Economic Survey sets forth rates charged by Oregon attorneys in the relevant year, including rates specific to communities such as Portland.

Plaintiff's counsel submits documentation consisting of one entry for attorney time of Ginger Mooney for 28.4 hours at $240 per hour without specifically documenting what work was performed related to the case against defendant Contreras. In addition, while the listed 42.8 hours of paralegal time for legal assistant Kate Hoffman at $120 per hour details the specific time entries for each day, there is no entry for what tasks were actually performed. Moreover, the law clerk time is listed in one entry for each law clerk without any detail regarding the tasks performed. Finally, plaintiff's counsel fails to provide any data on the qualifications or experience for any of the professionals. See Declaration Ginger Mooney (ECF 38) and attachments. Accordingly, the Court is unable to assess whether the hours spent on litigation were reasonable or whether the rates

Page 16 – FINDINGS & RECOMMENDATION

charged were reasonable. The Court should deny the request for fees without prejudice to resubmit a more detailed accounting of the fees incurred.

## CONCLUSION

Plaintiff's motion for judgment of default (ECF 37) should be granted. Judgment should be entered in favor of plaintiff and against defendant Carmen Contreras in the amount of $865,600. In addition, costs should be taxed in the amount of $470.12. Plaintiff's request for attorney fees should be denied without prejudice to allow plaintiff to resubmit an application with a detailed accounting of the time spent in litigating the case against defendant Contreras and the experience of the professionals involved.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 21st day of September, 2021.

          /s/ Jolie A. Russo
          Jolie A. Russo
          United States Magistrate Judge